IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case Number: _____

| | |
|---|---|
| **ALISANOS, LLC,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | **Jury Trial Demanded** |
| § | |
| **INTUITIVE SURGICAL, INC.,** § | |
| § | |
| *Defendant* § | |
| § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alisanos, LLC ("Alisanos" or "Plaintiff") alleges for its Complaint against Defendant Intuitive Surgical, Inc. ("Intuitive" or "Defendant") as follows:

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. The Court's jurisdiction over this action is proper under Title 35, including 35 U.S.C. § 271, *et seq.*, and under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338 (jurisdiction over patent actions).

### THE PARTIES

2. Plaintiff **Alisanos, LLC** is a limited liability company duly organized and existing under the laws of the State of Texas that maintains its principal place of business in Longview, Texas. Alisanos owns all rights and title to United States Patent No. 6,592,573 ("the '573 Patent" or "Patent-in-Suit").

3. Defendant **Intuitive Surgical, Inc.** is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1266 Kifer Road, Sunnyvale, California 94086. Intuitive may be served via its registered agent, CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

## BACKGROUND AND NATURE OF THE ACTION

4. In 1998, Medcanica, Inc. ("Medcanica"), a Florida corporation, was formed to research and develop next-generation medical devices, specifically focusing on safer, less invasive surgical tools for some of the most serious and dangerous of surgical procedures.

5. The principals of Medcanica, Inc. also created a specialized affiliate to Medcanica, Inc., an entity called POPCAB, LLC ("POPCAB"), a Florida limited liability company, to focus on the research and development of instruments for closed chest surgery that would limit invasiveness without sacrificing efficacy. Accordingly, the name "POPCAB" was chosen as an acronym for "port off-pump coronary artery bypass." One of the primary purposes of POPCAB, LLC was to hold all of the intellectual property related to closed chest surgical devices and the techniques and practices that would be developed by the Medcanica/POPCAB team, including the intellectual property that would become the '573 Patent.

6. The '573 Patent is titled **"Through-Port Heart Stabilization System."** A true and correct copy of the '573 Patent is attached hereto as **Exhibit A**. While working for Medcanica/POPCAB, Javier E. Castañeda, Jose Luis Francese, Matthew A. Palmer, and Ralph de la Torre invented a new and non-obvious heart-stabilization device that was designed to work primarily with the coronary artery. The four Medcanica inventors assigned their invention to POPCAB. On June 27, 2001, POPCAB filed patent application number 09/893,099 as a

continuation-in-part of patent applications that had been filed in October and December 2000. On July 15, 2003, the United States Patent and Trademark Office granted the '573 Patent.

7. Through a series of assignments, Alisanos acquired and now holds all rights, title, and interest to the '573 Patent.

8. While the '573 Patent was pending, Medcanica began looking for a business partner to assist in the development of this cutting edge technology. Medcanica's business goals were two fold: 1) Obtain the capital necessary to continue its already substantial research, design, and development of its planned surgical devices and technology; and 2) Gain access to distribution and marketing networks that the right type of partner could provide.

9. In late 2000, Medcanica/POPCAB engaged Intuitive Surgical, Inc. ("Intuitive"), a billion dollar corporation that manufactures, uses, markets, and sells robotic-assisted minimally invasive surgical systems and instruments, in the hopes of finding a business partner to fit their vision. This engagement led to the extensive sharing, under confidentiality agreements, of Medcanica/POPCAB's proprietary information, including the confidential pending patent applications that ultimately resulted in the '573 Patent.

10. On November 7, 2000, Medcanica and Intuitive entered into a "Two-Way Confidential Disclosure Agreement" ("CDA") whereby the parties could safely share proprietary information without the fear of that information being made public. Under the protection of this agreement, Medcanica gave Intuitive detailed information regarding the "POPCAB Procedure," which included detailed descriptions of the exact technology and patent applications that would eventually form the basis of the '573 Patent. Furthermore, the importance of protecting the parties' current patents and/or pending patent applications was specifically outlined in the CDA. The CDA preserved Medcanica/POPCAB's exclusive right to and interest in its proprietary

information and granted no right to Intuitive to the use of Medcanica/POPCAB's proprietary information.

11.     After gaining knowledge of Medcanica/POPCAB's proprietary information, Intuitive claimed to be interested in forming a "product development relationship" with Medcanica/POPCAB whereby Medcanica/POPCAB would adapt its existing inventions (which shortly thereafter formed the basis of the '573 Patent application) to be used within Intuitive's "ISI Robotic Surgical System." To this end, Medcanica/POPCAB proposed a "Term Sheet" on February 12, 2001, in an attempt to outline the would-be financial and work product obligations between the parties. Over the next two months, Intuitive balked at various versions of the proposed term sheet citing a wide array of reasons and excuses for not being ready or able to commit to a financial relationship. By the end of the Spring in 2001, after Intuitive had been privy to Medcanica/POPCAB's proprietary information that it admittedly wanted to add to its own system, Intuitive walked away from the table.

12.     By 2003, Medcanica/POPCAB had run out of financing to further product development. Without Intuitive or a replacement partner, there was no business relationship to help finance the research and product development. Likewise, the once promising upstarts were without ready-access to distribution and marketing channels, even if product development could resume.

13.     On July 30, 2003, John William "Bill" Box, the founder of Medcanica, Inc., established a new Florida-based company called Medcanica, LLC.

14.     In November 2003, POPCAB, LLC transferred all of its assets to Medcanica, Inc. and was dissolved, and in December 2003, Medcanica, Inc. transferred all of its assets to Bill

Box and was dissolved.  Mr. Box then transferred all of the assets, including the '573 Patent, to Medcanica, LLC.

15. Eventually, Medcanica, LLC was introduced to Alisanos, a small Texas-based company whose primary purposes involved intellectual property development and licensing. Alisanos and Medcanica, LLC discussed a potential business relationship, and the '573 Patent along with other intellectual property was assigned to Alisanos.  Currently, Alisanos owns all rights, title, and interest to the '573 Patent, the Patent-in-Suit.

16. Intuitive's *da Vinci S* and *da Vinci Si* robotic-assisted surgical systems (collectively "*da Vinci* system") use various Intuitive instruments to operate on a medical patient through surgical ports inserted into a patient's body.  One such component of the *da Vinci* system is the EndoWrist Stabilizer, which permits the system to operate as a heart stabilization device.  Alisanos contends that the EndoWrist Stabilizer device alone and in combination with the *da Vinci* system infringes at least one claim of the '573 Patent and that any other Intuitive systems and devices that are similar to and/or use the EndoWrist Stabilizer will likewise infringe one or more claims of the '573 Patent.

17. Accordingly, Plaintiff Alisanos as owner of all right, title, and interest to the '573 Patent brings this action against defendant Intuitive and accuses Intuitive of past and ongoing direct, indirect, and willful infringement of the '573 Patent.  Alisanos contends that Intuitive's infringement has been willful and is ongoing.  By this action, Alisanos seeks to put a stop to the Intuitive's illegal conduct and obtain compensation for Intuitive's past, ongoing, and willful infringement of the '573 Patent.  Intuitive, worth over a billion dollars and employing over 1,700 people, should not be allowed to continue using Alisanos's patented technology without

Alisanos's permission and without justly compensating Alisanos. Intuitive has benefitted from its unauthorized past and ongoing use of Alisanos's inventions.

## PERSONAL JURISDICTION AND VENUE

18.     On information and belief, Intuitive designed, developed, manufactured, used, distributed, offered to sell, and/or imported into the United States the *da Vinci S* and *da Vinci Si* robotic-assisted surgical systems and tissue stabilizer devices, including but not limited to the EndoWrist Stabilizer. On information and belief, Intuitive recruited and induced others such as consumers, businesses, distributors, resellers, sales representatives, hospitals, medical institutions, group purchasing organizations, physicians, and medical professionals to sell, offer to sell, and/or use *da Vinci S* and *da Vinci Si* robotic-assisted surgical systems and EndoWrist tissue stabilizer devices, including but not limited to the EndoWrist Stabilizer. On information and belief, hospitals within this district that use the accused Intuitive devices include Holy Cross Hospital and Broward Health Coral Springs Medical Center, both located in Fort Lauderdale, Florida. On information and belief, Intuitive has in the past and continues to promote, distribute, and/or actively encourage the sale and use of *da Vinci* robotic-assisted surgical systems and EndoWrist tissue stabilizer devices, including but not limited to the EndoWrist Stabilizer to consumers, businesses, distributors, resellers, sales representatives, hospitals, medical institutions, group purchasing organizations, physicians, and medical professionals for sale and use throughout this division, this judicial district, the State of Florida, and the United States. This Court has personal jurisdiction over Intuitive because it, by and through its employees, sales representatives, and other agents, has committed and continues to commit acts of direct infringement, contributory infringement, and/or inducement of infringement within the State of Florida and within this District, and places infringing products into the stream of commerce, with

the expectation, knowledge, and/or understanding that such products are used, offered for sale, and/or sold in the State of Florida, including in this District. For example, Intuitive has marketed, sold, and supported infringing devices and encouraged the use of infringing devices by physicians, agents, and employees of Holy Cross Hospital and Broward Health Coral Springs Medical Center. The acts by Intuitive caused injury to Alisanos within this District. On information and belief, Intuitive: has in the past and continues to derive revenue from the use, offer for sale, and/or sale of goods and services, including but not limited to the infringing products in the State of Florida and within this District; induces acts of infringement in the State of Florida and within this District; solicits and/or transacts business in the State of Florida and within this District; attempts to derive financial benefit from residents of the State of Florida, including the residents of this District; expects their actions to have consequences in the State of Florida and within this District; and/or derives substantial revenue from interstate and international commerce. On information and belief, Intuitive has sufficient minimum contacts within the forum and does substantial, continuous, and systematic business in the State of Florida, including the Southern District of Florida, and has purposefully directed activities to residents of the State of Florida. Thus, Intuitive has purposefully availed itself of the benefits of the State of Florida, and the exercise of jurisdiction over Intuitive would not offend traditional notions of fair play and substantial justice.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), for the reasons set forth above and herein. A substantial part of the events and omissions giving rise to this claim, as described above, occurred in this District. Additionally, Medcanica, LLC, which sold and assigned the '573 Patent to Plaintiff Alisanos was formed in and continues to be headquartered in the Southern District of Florida. The owner and

founder of Medcanica, John William "Bill" Box, has and continues to reside in this District. The inventors of the '573 Patent are former employees of or consultants to Medcanica, Inc. and/or POPCAB, LLC, and they performed their research and other employee obligations in this District. The majority of the inventors continue to reside in this District. Around 2001, Defendant Intuitive negotiated and interacted with Florida-based Medcanica, Inc. and POPCAB, LLC in this District. Intuitive has committed acts of direct and indirect infringement of the '573 Patent in this District, including without limitation, the act of marketing, selling, and supporting the purchase and use of infringing devices by Holy Cross Hospital and Broward Health Coral Springs Medical Center, both of which are located within this District and within this Division. Upon information and belief, Intuitive has committed and/or induced acts of patent infringement as described above in this District.

## ALISANOS'S ASSERTED PATENT

20. Alisanos incorporates and realleges the allegations contained in paragraphs 1 through 19 above as if fully set forth herein.

21. Through this civil action, Alisanos asserts direct, indirect, and willful infringement and inducement of infringement of one or more claims of the '573 Patent, entitled **"Through-Port Heart Stabilization System."**

22. The '573 Patent was duly and legally issued by the U.S. Patent and Trademark Office to named inventors Javier E. Castañeda, Jose Luis Francese, Matthew A. Palmer, and Ralph de la Torre on July 15, 2003, after full and fair examination. The '573 Patent issued from U.S. Patent Application No. 09/893,099 filed on June 27, 2001.[1]

---

[1] The application that resulted in the '573 Patent (Application No. 09/893,099) is a continuation-in-part of Application No. 09/686,696, filed on October 11, 2000, now U.S. Patent No. 6,464,691, and a continuation-in-part of Application No. 09/686,530, filed on October 11, 2000, now U.S. Patent No. 6,464,690, and a continuation-in-part of Application No. 09/733,493, filed on December 8, 2000, and a continuation-in-part of Application No.

23. Alisanos is the owner as assignee of all rights, title, and interest in and under the '573 Patent.

24. Alisanos has standing to sue for infringement of the '573 Patent.

25. Alisanos does not currently manufacture or sell any products embodying any claims of the '573 Patent and thus, no marking is currently required.

## COUNT I

## INTUITIVE'S DIRECT INFRINGEMENT OF THE '573 PATENT

26. Alisanos incorporates and realleges paragraphs 1 through 19 above as if fully set forth herein.

27. Defendant Intuitive is liable for infringing one or more claims of the '573 Patent. Intuitive has not obtained permission from Alisanos to make, use, offer to sell, sell, or import products, systems, or methods incorporating the inventions in the '573 Patent.

28. Defendant Intuitive has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '573 Patent by making, using, selling, offering to sell, and/or importing tissue stabilizer devices, including but not limited to the EndoWrist Stabilizer and robotic-assisted surgical systems that use the EndoWrist Stabilizer, including but not limited to the *da Vinci S* and *da Vinci Si* systems ("Accused Devices"). For example only and not as a limitation, the Accused Devices directly infringe at least claim 1 of the '573 Patent as well as other claims, because the Accused Devices are heart stabilization devices that embody every element of claim 1, as well as other claims. Intuitive's infringing uses include, but are not limited to, using the Accused Devices for testing, demonstration, marketing, surgical, and/or other purposes. Intuitive's infringing activities include manufacturing in the

---

09/733,498, filed on December 8, 2000, and a continuation-in-part of Application No. 09/733,503, filed on December 8, 2000, now U.S. Patent No. 6,355,028, and a continuation-in-part of Application No. 09/741,387, filed on December 20, 2000.

United States and/or importing the Accused Devices to the United States. Intuitive also infringes the '573 Patent by selling and offering to sell the Accused Devices directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, resellers, sales representatives, hospitals, medical institutions, group purchasing organizations, physicians, and medical professionals. Intuitive's infringement of the '573 Patent has caused substantial damage to Alisanos. Intuitive's infringing activities violate 35 U.S.C. § 271. Intuitive's direct infringement of the '573 Patent has been and remains willful.

## COUNT II

## INTUITIVE'S WILLFUL INFRINGEMENT OF THE '573 PATENT

29. Alisanos incorporates and realleges paragraphs 1 through 19 above as if fully set forth herein.

30. Defendant Intuitive committed its acts of infringement willfully and without license or authorization from Alisanos or from Medcanica/POPCAB. For example and without limitation, on information and belief, Intuitive knew of the patent applications that resulted in the Patent-in-Suit. On information and belief, Intuitive had access to and analyzed the parent applications of the '573 Patent while they were pending applications. Intuitive had this knowledge before designing, marketing, using, and selling the EndoWrist Stabilizer. On information and belief, Intuitive's knowledge of the patent applications that became the '573 Patent put Intuitive on notice that the Accused Devices infringed the '573 Patent.

31. Additionally, during the 2010 time period, Medcanica, LLC was exploring different business options and was working with ICAP Ocean Tomo to explore ways to monetize Medcanica, LLC's intellectual property. Upon information and belief, during this same time, ICAP Ocean Tomo contacted Intuitive and informed it that ICAP Ocean Tomo may be able to

acquire or otherwise make available for purchase Medcanica, LLC's intellectual property—including the '573 Patent.  Plaintiff contends that this contact by ICAP Ocean Tomo further informed Intuitive of the '573 Patent and put Intuitive on notice that the Accused Devices infringed the '573 Patent.  With Intuitive's knowledge of the '573 Patent, Intuitive's infringement was and continues to be objectively reckless.

32. Further, to the extent that Intuitive continues to make, use, sell, offer to sell, and/or import the Accused Devices after the filing of this lawsuit, each instance of these actions is an act of willful infringement by Intuitive for which Alisanos should be justly compensated.

33. Thus, Intuitive has disregarded and continues to disregard an objectively high likelihood that its actions constitute infringement of the '573 Patent. The objectively-defined risk has been known or is so obvious that it should have been known to Intuitive.  Intuitive's willful infringement of the '573 Patent has caused substantial damage to Alisanos.

**COUNT III**

**INTUITIVE'S CONTRIBUTORY INFRINGEMENT OF THE '573 PATENT**

34. Alisanos incorporates and realleges paragraphs 1 through 19 above as if fully set forth herein.

35. Defendant Intuitive has and continues to contributorily infringe (literally and/or under the doctrine of equivalents) one or more claims of the '573 Patent by, without limitation, providing, selling, and/or offering to sell the Accused Devices.  The EndoWrist Stabilizer is not a staple article of commerce and has no substantial non-infringing uses.  Intuitive's actions contribute to the direct infringement of the '573 Patent by consumers, businesses, distributors, resellers, sales representatives, hospitals, medical institutions, group purchasing organizations, physicians, and medical professionals that use, sell, offer to sell, and/or import within the United

States the Accused Devices.  Intuitive's contributory infringement of the Patent-in-Suit is willful, as described above, and has caused substantial damage to Alisanos.  Intuitive's infringing activities violate 35 U.S.C. § 271.

## COUNT IV

## INTUITIVE'S INDUCEMENT OF INFRINGEMENT OF THE '573 PATENT

36. Alisanos incorporates and realleges paragraphs 1 through 19 above as if fully set forth herein.

37. Defendant Intuitive has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '573 Patent.  Intuitive's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers, businesses, distributors, resellers, sales representatives, hospitals, medical institutions, group purchasing organizations, physicians, and medical professionals about how to use, promote, market, distribute, and/or sell the Accused Devices, including but not limited to Holy Cross Hospital and Broward Health Coral Springs Medical Center.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '573 Patent by consumers, businesses, distributors, resellers, sales representatives, hospitals, medical institutions, group purchasing organizations, physicians, and medical professionals, including but not limited to Holy Cross Hospital and Broward Health Coral Springs Medical Center.  Intuitive's inducement of infringement of the '573 Patent is willful as described above and has caused substantial damage to Alisanos.  Intuitive's infringing activities violate 35 U.S.C. § 271(b).

## DAMAGES

38. Alisanos incorporates and realleges the preceding paragraphs above as if fully set forth herein.

39. Intuitive's acts of infringement have caused substantial damage to Alisanos. As a direct and proximate consequence of Intuitive's unlawful acts and practices, Alisanos has been, is being, and will continue to be injured in its business and property rights. Alisanos has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

40. Intuitive is liable to Alisanos for such infringement, and as a result, Alisanos seeks recovery of the following damages:

   a. Alisanos seeks damages to adequately compensate it for Intuitive's infringement of the '573 Patent. Such damages should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

   b. Based on information and belief, Alisanos contends that Intuitive's acts of infringement have been and are willful, as described in the preceding paragraphs. Therefore, under 35 U.S.C. § 284, Alisanos seeks a finding of willfulness and recovery of enhanced damages up to three times the amount of damages found by the trier of fact. Alisanos further seeks recovery of its reasonable attorneys' fees and expenses under 35 U.S.C. § 285. Alisanos further seeks pre-judgment and post-judgment interest at the maximum rate permitted by law.

## PRAYER FOR RELIEF

41. Alisanos is entitled to and prays for relief on all claims as follows:

a. A judgment that the '573 Patent is infringed, directly and/or indirectly, either literally and/or under the doctrine of equivalents, by Intuitive;

b. A judgment and order requiring Intuitive to pay Alisanos all damages adequate to compensate for Intuitive's infringement of the '573 Patent under 35 U.S.C. § 284, and in no event less than a reasonable royalty. Such damages shall include treble damages for willful infringement as provided by 35 U.S.C. § 284 and supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting as needed;

c. A judgment and order requiring Intuitive to pay Alisanos pre-judgment and post-judgment interest at the maximum rate permitted by law on the damages awarded;

d. A judgment and order finding this case to be an exceptional case and requiring Intuitive to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

42. Alisanos hereby requests a trial by jury on each claim for relief alleged in this Complaint.

Respectfully submitted,

s/Carl R. Nelson
**CARL R. NELSON,** FLA. BAR NO: 0280186
**SCOTT A. RICHARDS,** FLA. BAR NO: 0072657
**FOWLER WHITE BOGGS P.A.**
501 E. KENNEDY BLVD.
SUITE 1700
TAMPA, FL 33602
813-228-7411 (TELEPHONE)
813-229-8313 (FACSIMILE)

|  |  |
|---|---|
| **OF COUNSEL** | -and- |
|  | **TERREMCE RUSSEL** |
| **DEREK GILLILAND*** | FLORIDA BAR NO: 116057 |
| TEXAS STATE BAR NO. 24007239 | **FOWLER WHITE BOGGS P.A.** |
| **NIX PATTERSON & ROACH, L.L.P.** | 1200 EAST LAS OLAS BLVD. |
| 205 Linda Drive | SUITE 500 |
| Daingerfield, Texas 75638 | FORT LAUDERDALE, FL 33301 |
| 903.645.7333 (telephone) | 954-703-3929 (TELEPHONE) |
| 903.645.5389 (facsimile) | 954-703-3939 (FACSIMILE) |
| dgilliland@nixlawfirm.com | terrence.russell@fowlerwhite.com |

**EDWARD CHIN***
TEXAS STATE BAR NO. 50511688
**ANDREW J. WRIGHT***
TEXAS STATE BAR NO. 24063927
**KIRK VOSS***
TEXAS STATE BAR NO. 24075229
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@me.com
andrewjwright@me.com
kirkvoss@me.com

* - Motions to Appear *Pro Hac Vice* to be filed.

                                          **ATTORNEYS FOR PLAINTIFF**
                                          **ALISANOS, LLC**